**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| TRACY CHADDOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-1074-RDR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

On October 26, 2009, plaintiff filed an application for supplemental security income (SSI) benefits, alleging disability beginning on August 16, 2005. The alleged disability date was later amended to October 26, 2009. On August 24, 2011, a hearing was conducted upon plaintiff's application. The administrative law judge (ALJ) considered the evidence and decided on December 9, 2011 that plaintiff was not qualified to receive benefits because she was not "disabled" as required under the law. The Appeals Council denied review and the ALJ's decision was then adopted by defendant. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

To qualify for SSI benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. §

1381a. This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant becomes eligible for SSI benefits in the first month where he is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1270 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994)(quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v.

Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 11-25).

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. § 416.920 for determining eligibility for SSI benefits. The ALJ found first that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, October 26, 2009.

Second, the ALJ found that plaintiff has the following severe medical impairments: bradycardia; atherosclerosis; coronary artery disease; bipolar disorder NOS; bipolar disorder with psychotic features; major depressive disorder/major depression; generalized anxiety disorder/anxiety disorder; and panic disorder without agoraphobia. The ALJ found that plaintiff had a mild restriction in her activities of daily living and observed that she was able to take care of herself, do typical household tasks, drive, and manage her finances. He determined that she had moderate difficulties in social functioning, although she could shop in stores and did attend church. The ALJ further concluded that plaintiff had moderate difficulties in concentration, persistence or pace, although he acknowledged that plaintiff had been noted by some sources to have good concentration, attention, insight and memory.

3

Third, he determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the social security regulations.

Fourth, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform a range of medium work as defined in 20 C.F.R. § 416.967(c), but is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment or as an integral part of a team, and involving only simple work-related decisions. The ALJ further found that plaintiff was limited to superficial interaction with supervisors and co-workers and must avoid all interactions with the general public. With this RFC in mind, the ALJ found that plaintiff could not perform her past relevant work as a personal care attendant.

Finally, at the fifth step, the ALJ concluded, after considering plaintiff's age, education, work experience, and RFC, that there were jobs which existed in significant numbers in the national economy that plaintiff could perform. In making this finding, the ALJ relied upon a vocational expert who testified that plaintiff would be able to perform the requirements of a kitchen helper, industrial cleaner and dining room attendant.

III. THE ALJ PROPERLY CONSIDERED THE EVIDENCE RELATING TO PLAINTIFF'S RFC.

Plaintiff makes two main arguments to overturn the decision to deny SSI benefits. First, plaintiff contends that the ALJ failed to properly consider relevant evidence in determining plaintiff's RFC. Specifically, plaintiff argues that the ALJ did not consider plaintiff's carpal tunnel syndrome and failed to consider plaintiff's GAF scores in light of the longitudinal evidence. Plaintiff references SSR 96-8p in making this argument.

A. Carpal tunnel syndrome

As plaintiff's counsel acknowledges in her brief, the ALJ considered evidence in the record regarding carpal tunnel syndrome and determined that that it was a non-severe impairment to the extent that it was established. (Tr. 14). He noted that the plaintiff was assessed with carpal tunnel syndrome by a nurse practitioner, Michael Forbes, on March 21, 2011 and that this was not an acceptable medical source for establishing whether plaintiff had an impairment.[1] The ALJ gave weight to a consultative physical examination by Dr. Saad M. Al-Shathir on January 4, 2010. (Tr. 18). This examination did not report a significant problem with carpal tunnel syndrome; it also

---

[1] Forbes' report of his examination stated that plaintiff complained that her feet and hands went numb at night and that she needed to sit up and wiggle her feet and hands until the feeling came back. Positive bilateral Phalen's and Tinel's signs were reported. And bilateral wrist splints and pain medication were prescribed. (Tr. 436).

5

concluded that plaintiff could manipulate objects in her hands. (Tr. 323-328). The ALJ also give significant weight to the physical residual functional capacity assessment of Dr. Rees (on June 7, 2010) as affirmed by Dr. Wainner. These opinions did not list any manipulative limitations. (Tr. 377, 417). Nor did plaintiff mention carpal tunnel as a significant issue during her testimony before the ALJ. She stated that, during the daytime, numbness affected her "slightly" and that she had to be careful gripping her coffee cup or an ink pen. (Tr. 74).

SSR-96-8p, 1996 WL 374184 at *1, provides in part that:

> The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. . . . RFC is not the <u>least</u> an individual can do despite his or her limitations or restrictions, but the <u>most</u>.

It further provides at *5 that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing along may not significantly limit an individual's ability to do basic work activities, it may - - when considered with limitations or restrictions due to other impairments - - be critical to the outcome of a claim.

The court rejects plaintiff's argument that the ALJ erred by not considering evidence of plaintiff's carpal tunnel syndrome. The ALJ did consider the evidence. But, in light of the slight proof of any functional limitation from carpal tunnel

6

syndrome, as well as the medical evidence and reports of daily activities indicating the absence of a substantial limitation, the ALJ's RFC findings are supported by substantial evidence.

B. <u>GAF scores</u>

The ALJ commented as follows regarding plaintiff's GAF (Global Assessment of Functioning) scores:

> GAF scores have consistently been low in the 45-49 range, suggesting the presence of very limiting mental symptoms. However, GAF scores include not only Axis I and II diagnoses, but Axis IV factors such as social and occupational functioning. [Plaintiff's] treatment notes consistently report Axis IV problems in conjunction with her GAF scores. Because of the inclusion of these non-disability factors, these GAF scores are given some weight.

(Tr. 21). Plaintiff contends that the ALJ did not provide an adequate legal basis for this conclusion.

A GAF score is an estimate of a person's functional level which considers psychosocial stressors as well as other mental health issues. As explained recently in <u>Osburn v. Colvin</u>, 2013 WL 6389138 *5 (E.D.Cal. 12/06/2013):

> A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, at 32 (Am. Psychiatric Ass'n 4th ed. 2000) ("DSM–IV"). "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1160 n. 2 (9th Cir.2012) (quoting <u>Vargas v. Lambert</u>,

7

> 159 F.3d 1161, 1164 n. 2 (9th Cir.1998)). GAF Scores range from 1-100. DSM-IV at 32. In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. DSM-IV at 34. A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

The court in Osburn further noted that in 2013 the American Psychiatric Association dropped the GAF scale from its multiaxial diagnostic system. Id. at *6.

In plaintiff's case, Axis IV factors which affected one of plaintiff's GAF scores included: problems related to primary support; financial difficulties; problems in living situation; and access to health care services. (Tr. 339). Another assessment listed "problems with social environment, educational problems, unemployment, financial difficulties and access to health care services" as Axis IV factors affecting plaintiff's GAF score. (Tr. 336). Another listed economic problems, health care access problems and housing problems as some of the Axis IV psychosocial and environmental problems. (Tr. 534).

We find that the ALJ reasonably held that "non-disability factors" negatively affected plaintiff's GAF score. And we find that the ALJ's reasoning has been upheld in other cases. See

Creed v. Astrue, 2010 WL 2520087 *4 (D.Kan. 6/15/2010)(affirming ALJ consideration of Axis IV factors as one reason to discount GAF score); Boucher v. Astrue, 2009 WL 737156 *2 (D.Kan. 3/20/2009)(same); Effertz v. Astrue, 2008 WL 4787522 *4 (D.Kan. 10/31/2008)(considering GAF scores as "a piece" of the record that standing alone and in light of Axis IV factors does not necessarily determine disability); Olds v. Astrue, 2008 WL 339757 *4 (D.Kan. 2/5/2008)(same); see also, Petree v. Astrue, 260 Fed.Appx. 33, 42 (10th Cir. 12/28/2007)(a low GAF score is a piece of evidence to be considered with the rest of the record); Lee v. Barnhart, 117 Fed.Appx. 674, 678 (10th Cir. 12/8/2004)(a low GAF score does not necessarily evidence a serious work impairment). Therefore, we hold that the ALJ did not commit a legal error in his review and consideration of plaintiff's GAF scores as part of his overall disability analysis.

IV. THE ALJ PROPERLY ANALYZED PLAINTIFF'S CREDIBILITY.

Plaintiff's second major argument to reverse the decision to deny SSI benefits is that the ALJ failed to properly analyze plaintiff's credibility. Specifically, plaintiff argues that the ALJ failed to consider that plaintiff has consistently reported insomnia, exhaustion, and a desire to avoid people. Plaintiff further argues that the ALJ failed to adequately consider the effectiveness of plaintiff's treatment. In reviewing this contention, we note that credibility

determinations are the province of the ALJ and we will not upset such determinations if they are supported by substantial evidence. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). An ALJ is not required to do a "formalistic factor-by-factor recitation of the evidence" as part of a credibility analysis, but he should discuss the specific evidence he relies on in evaluating the issue. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012). "[C]ommon sense, not technical perfection, is our guide." Id.

The ALJ began his assessment of plaintiff's credibility by discussing her function report, which indicated that plaintiff has no problems with personal care, performs typical household chores, can manage bills and bank accounts, drives a car, follows simple written and verbal instructions, and shops once a month. The ALJ reviewed plaintiff's testimony that she does not leave the house often, but does go grocery shopping, attends church on occasion, and that she tries to get along with people, but not be around them too long. He considered plaintiff's testimony that most weeks she has four bad days during which she stays in bed, does not leave the house, and wants to be left alone. The ALJ discounted this testimony as inconsistent with the degree of limitation described in plaintiff's medical records. He found that plaintiff has been prescribed appropriate medications for her physical and mental impairments

10

and that these medications have been effective in controlling her symptoms. He further determined that the record reflected some inconsistencies in plaintiff's reports.

Upon review of the record, the court finds that the ALJ followed the proper legal standards and that his conclusions are supported by substantial evidence. The ALJ stated the same factors from SSR 96-7p for evaluating credibility that plaintiff repeats in her brief to reverse his decision. We find no grounds to hold that the ALJ did not actually apply these standards.

As plaintiff argues, she has made some consistent complaints to caregivers over the years. She also has had issues with the effectiveness, side effects, and availability of medication. This does not mean that all of plaintiff's alleged functional limitations are as severe as plaintiff alleges or that the ALJ must accept them as reported by plaintiff. Plaintiff's psychiatric state was recorded as "normal" several times in 2011. (Tr. 513, 521, 523, and 526). In July 2010 and January 2011, plaintiff was assessed as having a "mild impairment" from mood swings, uncontrolled anger, and anxiety. (Tr. 385-387, 460-461). A consultative examination in February 2010 concluded that plaintiff could adapt to a simple work environment, could concentrate and persist on simple tasks during a normal work day, and could interact in a limited

contact situation with the public and supervisors or co-workers. (Tr. 336). These reports, and others, support the ALJ's conclusions that medication has shown effectiveness in controlling plaintiff's symptoms and that plaintiff's functional capacity is not as limited as plaintiff's testimony would imply.

Therefore, we reject plaintiff's claim that the ALJ failed to properly analyze plaintiff's credibility.

V. CONCLUSION

For the above-stated reasons, defendant's judgment denying plaintiff's claims for benefits shall be affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 29th day of January, 2014, at Topeka, Kansas.

s/ Richard D. Rogers
Richard D. Rogers
United States District Judge